UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TUNDRE HARPER, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:23-cv-02073 |
| | ) |
| v. | ) |
| | ) |
| R&R GENERAL CONTRACTORS, INC., | ) |
| | ) |
| | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff, Tundre Harper ("Harper"), by and through the undersigned counsel, hereby files this Response in Opposition to Defendant R&R General Contractors, Inc's ("Defendant") Motion for Summary Judgment, and in support thereof, states as follows:

**INTRODUCTION**

This case is about Defendant terminating Harper's employment shortly after he notified Defendant that he had a medical condition requiring surgery, and that he would need time off work. Harper had no documented history of discipline or poor performance, and Defendant has given conflicting explanations for the termination. Because Harper was terminated without adequate justification after he notified Defendant of a disability and need for time off for medical reasons, Harper has brought claims for violations of the Americans with Disabilities Act ("ADA"), and Family Medical Leave Act ("FMLA"). Defendant has filed a Motion for Summary Judgment. [Dkt. No. 34]. In its Motion, Defendant argues that Harper cannot establish that he suffered from a disability, or perceived disability, thus, it is entitled to summary judgment on Harper's ADA claims. Defendant further argues that Harper did not provide sufficient notice of an FMLA-

1

qualifying reason for leave, thus, it is entitled to summary judgment on Harper's FMLA claims. Defendant further argues that even if it did interfere with Harper's FMLA rights, Harper suffered no harm, thus cannot sustain a claim under the FMLA.

As explained below, Defendant's arguments are without merit, and its Motion should be denied because Harper is able to establish he suffered a disability or perceived disability. Additionally, Harper is able to establish that he provided Defendant with enough information to put Defendant on notice as soon as practicable that FMLA-qualifying leave was needed. Finally, Harper suffered economic harm as a result of Defendant interfering with his FMLA rights. Accordingly, Defendant is not entitled to judgment as a matter of law. Therefore, Harper respectfully requests the Court deny Defendant's Motion in its entirety.

## RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

## UNDISPUTED MATERIAL FACTS

1. Harper underwent a hemorrhoidectomy performed by Dr. Anewenah on September 17, 2021. *See* deposition testimony of Harper attached hereto as Exhibit A, page 16, lines 20-22.

2. Harper was an employee of R&R until September 23, 2021, when he received a "LAY OFF SLIP", attached hereto as Exhibit B.

6. Harper testified he had no discussions with anyone at R&R regarding FMLA leave.

7. Harper testified that he first informed management at R&R regarding his hemorrhoidectomy was September 14, 2021. See Exhibit A, page 41, lines 6-24.

8. R&R was subject to FMLA.

9. Harper was eligible for FMLA based on his tenure and hours worked at R&R. See Exhibit A, p. 79, lines 9-12.

## DISPUTED MATERIAL FACTS

3. Harper testified that before the surgery, he was "definitely" able to attend to his day-to-day functions. See Exhibit A, p. 83, lines 2-8. <u>Harper testified: "Oh, yeah, yeah, yeah. Definitely. I was still able to- I was able to, you know, do what I was normally doing, *just had to go to the restroom*. That's all." (emphasis added). Further, this is an incomplete characterization of Harper's testimony, as he explained other symptoms and limitations he was suffering, as explained below.</u>

## DISPUTED IMMATERIAL FACTS

3. Harper testified that his period of disability was the time from recuperating from his September 17, 2021, hemorrhoidectomy. *See* Exhibit A, p. 83, lines 19-22, p. 84, lines 5-9. <u>This fact is immaterial because Harper is not an expert qualified to offer an opinion on the ultimate issue of disability but can merely testify to the facts underlying his claims. This fact is disputed because the record shows that Harper began experiencing substantial limitations to major life activities as early as August 2021. (Harper Dep. 102:4-22).</u>

## UNDISPUTED IMMATERIAL FACTS

4. Plaintiff's treater, Dr. Anewenah has not testified in this case.[1] <u>This fact is immaterial because Dr. Anewenah's testimony is not necessary to establish Plaintiff's claims.</u>

5. Harper recalled R&R had posters that would explain legal rights, whether it be for the EEOC or FMLA. See Exhibit A, p. 96, lines 13-17. <u>This fact is immaterial because</u>

---

[1] Defendants Statement of Undisputed Material Facts is misnumbered, using the number 4 twice.

Defendant's obligations under the ADA and FMLA go beyond merely having posters visible to employees.

     10.    Harper received unemployment from R&R between September and November of 2021. This fact is immaterial because of the collateral source rule. Under the collateral source rule, Defendant is not permitted to rely on Plaintiff's unemployment benefits to reduce its liability here.

## ADDITIONAL MATERIAL FACTS

     1.    Harper was a long-time employee of Defendant, beginning employment in 2018 until his termination on September 23, 2021. Defendant's Response to Interrogatory No. 13, attached hereto as Exhibit A.

     2.    Defendant asserts it raised discipline and performance issues, including hostile interactions between Harper and another employee, but Defendant did not make any records to document any such issues. (Betterton Dep. 32:15-20, attached here to as Exhibit B);[2] (Thomas Dep. 28:7-16, attached hereto as Exhibit C); (Bernius Dep. 15:2-5, attached hereto as Exhibit D).

     3.    Harper began experiencing blood in his stool, and more frequent and painful bowel movements in or around August 2021. (Harper Dep. 102:4-22).

     4.    Harper's symptoms included cramping in his abdomen that was very uncomfortable, blood in his stool, and painful and more frequent bowel movements. (Harper Dep. 102:14-103:11).

     5.    Harper sought treatment for his symptoms at an emergency room in or about August 2021, and he was referred to Dr. Anewenah for follow up treatment. (Harper Dep. 16:4-19).

---

[2] Betterton served as Defendant's Corporate Representative under Federal Rule of Civil Procedure 30(b)(6).

6. Defendant was upset with Harper for informing one of their clients of his condition. (Bernius Dep. 15:6-13).

7. At the time, Harper's supervisor was Gabe Thomas (Thomas). (Harper Dep. 35:13-15).

8. Harper informed management personnel, Thomas and Josh Bernius (Bernius), on or about August 31, 2021, that he was experiencing gastrointestinal issues. (Harper Dep. 13:20-14:2).

9. On or about the same day, Harper told Thomas and Bernius that he needed time off for surgery related to his gastrointestinal issues. (Harper Dep. 13:20-14:2).

10. Harper understood Bernius to be a partial owner of the company. (Harper Dep. 29:4-6).

11. Bernius told Harper to notify Thomas when he needed time off. (Harper Dep. 98:5-13).

12. On or about September 8, 2021, after a prior emergency room visit, Harper was treated for blood in his stool by Dr. Anewenah. (Harper Dep. 15:8-23).

13. On September 13, 2021, Harper sent a text message to Gabe Thomas (Thomas) that said "Told you blood in my stool… Just prepare for the outcome[,]" and Thomas replied on September 14, 2021, establishing he had received Harper's text message. (Harper Dep. 24:19-25:1); Text message to Thomas, attached hereto as Exhibit E.

14. On September 15, 2021, Harper asked Thomas if he needed to notify Deb of his condition, and surgery, and Thomas said "no." (Harper Dep. 20:21-21:4); Exhibit E.

15. Deb was the office manager and responsible for keeping track of absences. (Thomas Dep. 17:9-15).

16. On or about September 13, 2021, Harper sent a text message to Juan, who was in a supervisor roll for Defendant, informing Juan of his symptoms. (Harper Dep. 100:18-101:1).

17. On or about September 14, 2021, Harper informed Juan and Thomas that he was going to be out for surgery. (Harper Dep. 101:20-24).

18. Harper had surgery on September 17, 2021 and was unable to work while he recovered. (Harper Dep. 61:1-9).

19. Shortly after his surgery, on or about September 20, 2021, Harper sent a text message to Bernius noting "this pain is the worse I've ever endured . . . I talked to Gabe and Doctor said I could possibly be back to work endo of week." (Harper Dep. 30:12-17); Text message between Harper and Bernius, attached hereto as Exhibit F.

20. Ultimately, Harper was not cleared to return to work until November 21, 2021. (Harper Dep. 55:7-12); November 2021 Doctor's Note, attached hereto as Exhibit G.

21. Despite no documented record of a history of discipline, Defendant terminated Harper's employment on or about September 23, 2021. Defendant asserted the decision was made "just prior" to the date of termination. (Betterton Dep. 39:6-10).

22. At the time of his termination, Harper was earning $24.00 per hour in the position of Foreman. *Id.* at 69:22-70:8.

23. Harper secured subsequent employment on or about November 29, 2021, earning less than when employed by Defendant, i.e., approximately $17.52 per hour. (Harper Dep. 8:14-19).

24. Defendant's explanations for termination are inconsistent, claiming Harper was terminated for "major misconduct," with no documented discipline history, but also claiming that Harper was "laid off" for "other." (Betterton Dep. 38:12-21).

25. In discovery, Defendant obtained Harper's medical records from August 2021 through November 2012 from the Hospital Sisters Health System, which shows Harper's record of physical impairment. HSH Medical Records, attached hereto as Exhibit H.

## ARGUMENT

### I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, Summary Judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden to specify the basis upon which summary judgment should be granted and to identify portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets its burden, the burden then shifts to the non-movant to specify facts supported by the record upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Summary judgment should only be granted where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, and there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Furthermore, the standard for summary judgment is applied with particular care in employment discrimination cases, which often turn on the issues of intent and credibility. *Kennedy v. Schoenberg, Fisher & Newman*, 140 F.3d 716, 722 (7th Cir. 1998). Issues regarding intent and credibility are to be weighed by the fact-finder and not by a judge at summary judgment. *Bagley v. Blagojevich*, 646 F.3d 378, 389 (7th Cir. 2011) (quoting *Alexander v. Wis. Dept. of Health & Family Services*, 263 F.3d 673, 681 (7th Cir. 2001))*; Sally Beauty Co. Nexxus Products Co., Inc.*,

801 F.2d 1001, 1005 (7th Cir. 1986); *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986).

## II. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER PLAINTIFF WAS DISABLED OR PERCEIVED AS DISABLED, THUS, DEFENDANT CANNOT SHOW THAT IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

"To succeed on an ADA claim, an employee must show three elements: (1) [they] are disabled; (2) [they are] otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by [their] disability." *Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 490 (7th Cir. 2020). "A disability is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having an impairment." *Dickerson v. Bd. of Trs.*, 657 F.3d 595, 600 (7th Cir. 2011) (citing 42 U.S.C. § 12102(1)).

"[D]etermining whether a plaintiff has a disability is made on an individualized basis." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 607 (7th Cir. 2012). Major life activities include caring for oneself, and the operation of a major bodily function, including the digestive system. *See* 29 C.F.R. § 1630.2(i). "Substantially limits" is not meant to be a demanding standard. 28 C.F.R. § 35.108(d)(1)(i). "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 28 C.F.R. § 35.108(d)(1)(iv). "A plaintiff establishes a record of impairment by showing that he has a 'history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *Stone v. Sangamon County Sheriff's Dep't.*, 168 F. Supp. 2d 925, 931-32 (C.D. Ill. Oct. 11, 2001) (quoting 29 C.F.R. § 1630.2(k)). To establish a regarded as claim, a plaintiff must show that the employer believed that one or more of the plaintiff's major life activities were

8

substantially limited by the plaintiff's impairment. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001).

A.   **A REASONABLE JURY COULD FIND THAT HARPER SUFFERED FROM A DISABILITY**

Here, there is a genuine issue of material fact as to whether Plaintiff was disabled, or regarded as disabled at the time of his employment with Defendant that precludes summary judgment. First, Harper has established that he suffers from a physical impairment that substantially limited one or more major life activities. Harper's condition of hemorrhoids and associated gastrointestinal issues, which began as early as August 2021, led to significant symptoms including blood in his stool, painful and uncomfortable cramping, and more frequent and painful bowel movements. Statement of Additional Material Facts (SAMF), ¶¶ 3-4. Further, Harper's medical records indicate he suffers from diverticulitis. *See* Exhibit H.

Harper's condition substantially limited his ability to perform major life activities, particularly, Harper's ability to care for himself because he suffered from increased and more frequent bowel movements and abdominal cramping; and Harper's ability to work after his surgery. Harper's digestive symptoms are sufficient to meet the definition of disability under the ADA. *See, e.g., Hodge v. Henry County Medical Center,* 341 F. Supp. 2d 968 (W.D. Tenn. 2003) (collecting cases in which employees who suffered from Chron's disease, and suffered symptoms such as frequent bowel movements, diarrhea, cramps, nausea, bowel urgency, gas, surgical resection of the bowel and dietary limitations were found to have been disabled within the meaning of the ADA); *EEOC v. Mollertech Corp.*, No. 03-73831, 2005 U.S. Dist. LEXIS 50308, *22 (E.D. Mi. Mar. 31, 2005) (finding allegations that the plaintiff suffered pain, diarrhea, sudden and frequent bowel movements, multiple surgeries for removal of diseased sections of his bowel, dietary restrictions, weight fluctuation, multiple drug therapies, frequent hospitalizations for

9

surgery or for "bowel rest", and sleep disturbance were sufficient to allow a reasonable jury to conclude the plaintiff was disabled); *Crane v. Dejoy*, No. 4:20-cv-572-CLM, 2022 U.S. Dist. LEXIS 21338, at *5 (N.D.Ala., Feb. 7, 2022) ("Again, Crane's disability is she has to go to the restroom "quickly," or otherwise she could "urinate on [herself]."); *McDaniel v. Wisconsin Department of Corrections*, No. 20-cv-1919-bhl, 2021 U.S. Dist. LEXIS 73583, at *9 (E.D.Wis., 2021) ("Further, failure to accommodate bathroom use substantially limits one or more major life activities, including the ability to care for one's self."); *Zako v. Encompass Digital Media, Inc.*, No. 3:19-cv-844 (MPS), 2020 U.S. Dist. LEXIS 114387, at *23 (D.Conn. June 30, 2020) ("Based on these allegations [of pain and bleeding after a few hours of not urinating], Zako has plausibly alleged he has a disability within the meaning of the ADA").

Thus, there is a genuine issue of material fact as to whether Plaintiff suffered from a condition that substantially limited one or more major life activities.

**B.     A REASONABLE JURY COULD FIND THAT HARPER CAN ESTABLISH A RECORD OF IMPAIRMENT**

Next, Harper is able to establish a record of his impairment. *See* Exhibit H. There is no question that Harper had surgery on September 17, 2021, due to his ongoing symptoms, and that he notified Defendant he would be out of work due to the surgery as early as August 31, 2021. SAMF ¶¶ 8-9. Harper asked his supervisor if he needed to inform Deb, the office manager, and provide documentation regarding his surgery, and his supervisor said "no," so he did not provide his doctor's note. *Id.* at ¶¶ 13-14. Nevertheless, documentation from St. Mary's Hospital in Decatur, Illinois, shows that Harper was receiving medical care from Dr. Leslie Anewenah, that he was diagnosed with blood in the stool and diverticulitis; that he had surgery to treat his condition on September 17, 2021; and that he had follow up appointments on September 28, 2021 and

November 23, 2021, where it was noted that though Harper has recovered from his surgery, he continues to suffer from constipation. *See* Exhibit G.

Thus, there is a genuine issue of material fact as to whether there is a sufficient record of Harper's physical impairment that precludes summary judgment.

C. **A REASONABLE JURY COULD FIND THAT DEFENDANT REGARED HARPER AS DISABLED**

Next, the record establishes that Defendant regarded Harper as disabled. Harper informed management personnel, Thomas and Bernius, as early as August 31, 2021, that he was experiencing pain in his abdomen and blood in his stool and that he may need surgery. Harper told Thomas on September 13, 2021, that he was continuing to have symptoms, and he told Thomas and another supervisor, Juan on September 14, 2021, that he was going to have surgery on September 17, 2021. SAMF ¶¶ 8-9, 16-17. After his surgery, it became clear that Harper would not be able to return to work as early as projected due to severe pain. *See* Exhibit F (Harper explaining the significant amount of pain he is in post-surgery); Exhibit G (doctor's note eventually clearing Harper to return to work on November 29, 2021.) Defendant made the decision to terminate Harper the day after it became clear he was in a lot of pain and would not be able to return right away. SAMF ¶ 21. Ultimately, Harper was not cleared to return to work until November 29, 2021. *See* Exhibit G. In any event, the record is clear that Harper notified Defendant of his medical condition, and that as soon as it became clear that Harper was going to need a longer period to recover, Defendant terminated his employment. Thus, a reasonable jury could find that Defendant perceived Harper as disabled, and rather than deal with his anticipated absences due to his disability, they terminated him.[3]

---

[3] Even if Defendant is able to establish that Harper's condition was "transitory and minor," that exception to the "regarded as" prong is an affirmative defense that Defendant bears the burden of

11

Accordingly, there are genuine issues of material fact that preclude summary judgment; thus, the Court should deny Defendant's Motion.

III. **THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER HARPER HAD AN FMLA-QUALIFYING REASON FOR LEAVE; WHETHER HARPER PROVIDED SUFFICIENT NOTICE; AND WHETHER DEFENDANT INTERFERED WITH, RESTRAINED, OR DENIED HARPER FMLA BENEFITS**

To show an FMLA interference violation under § 2615(a)(1), Plaintiff must show that: (i) he was eligible for FMLA protections; (ii) the Defendant was covered by the FMLA; (iii) Plaintiff was entitled to leave under the FMLA; (iv) Plaintiff provided sufficient notice of his intent to take leave; and (v) the Defendant interfered with, restrained, or denied FMLA benefits to which he was entitled. *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022). Under the FMLA, a Plaintiff is entitled to leave "Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "A Serious Health Condition is defined as an illness, injury, impairment, or physical or mental condition that involves either (1) inpatient care in a hospital, hospice, or residential medical facility; or (2) continuing treatment by a healthcare provider." *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008).

The FMLA defines a serious health condition as one that involves either inpatient care or continuing treatment by a health care provider. *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014). In the Seventh Circuit, an employee is entitled to FMLA leave if they have a serious health condition that makes them unable to perform the essential functions of their

---

proving, and is not entitled to pursue here because Defendant has failed to answer the complaint or plead any affirmative defenses. *Nunies v. HIE Holdings, Inc.*, 908 F.3f 428, 435 (9th Cir. 2018) (citing 29 C.F.R. pt 1630, app. § 1630.2(l); *id.* at § 1630.15(f); *see also Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019) (holding same).

position. *Valdivia v. Twp. High Sch. Dist. 214*, 942 F.3d 395, 398 (7th Cir. 2019). The regulations further clarify that conditions that incapacitate and require multiple treatments, such as those involving outpatient surgery and subsequent recovery, can qualify as serious health conditions. *See* C.F.R. § 825.115 (a) and (e). "'Incapacity' means the inability to work or perform other regular daily activities due to the serious health condition." *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

    A.    **A REASONABLE JURY COULD FIND THAT HARPER SUFFERED FROM A SERIOUS HEALTH CONDITION**

Here, the facts clearly show that Harper was suffering from a "serious health condition" at all times material. Harper was experiencing severe problems with his gastrointestinal system for several weeks, and eventually required surgery that had him out of work from September 17, 2021, until November 29, 2021. SAMF ¶¶ 3, 18, 20. Prior to surgery, Harper's condition required an emergency room visit, and continuing treatment with Dr. Anewenah, including treatment on or about September 8, 2021, September 17, 2021 (surgery), September 21, 2021 (post-surgery follow up), and November 23, 2021. SAMF ¶ 12; Exhibit H. On September 13, 2021, Harper clearly told his supervisor, Thomas, that he was going to be out for surgery, and he asked if he needed to inform Deb, the office manager, to which Thomas said "No." SAMF ¶¶ 13-14. On September 20, 2021, Harper sent Bernius a text message explaining that the post-surgery pain is the worst he has ever endured, and he notified Bernius that his doctor said he could possibly be back to work by the end of the week. SAMF ¶ 19. Thus, Harper clearly communicated to Defendant that he was suffering from a condition that left him incapacitated for more than three days (ultimately Harper was incapacitated for nearly 10 weeks from September 17, 2021, through November 29, 2021). Thus, there is a genuine issue of material fact concerning whether Harper suffered a serious health condition.

Defendant goes on to argue that Harper failed to provide sufficient information to confirm entitlement to leave. However, Defendant misconstrues the notice requirements and its obligations under the FMLA.

### B. A REASONABLE JURY COULD FIND THAT HARPER PROVIDED SUFFICIENT NOTICE OF HIS SERIOUS HEALTH CONDITION REQUIRING LEAVE

"The notice requirements of the FMLA are not onerous. An employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions." *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006). "It is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed." *Horwitz v. Bd. of Educ. Of Avoca Sch. Dist. No. 37*, 26 F.3d 602, 616 (7th Cir. 2012). Under the Act, the employee must provide notice of his intent to take leave to the employer as soon as practicable under the circumstances. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 364 (7th Cir. 2020) (citing 29 C.F.R. § 825.303(a)). "If the employer does not have enough information about the reason for an employee's request for leave, the employer should inquire further of the employee to determine whether leave is potentially FMLA-qualifying." *Id.* "[T]he employer's failure to timely determine whether the employee's leave counts as FMLA-qualifying may constitute an interference with the employee's FMLA rights." *Id.* at 365.

"[T]he notice inquiry is a fact-rich question ... perhaps best resolved by the trier of fact.[]" *Pagel v. TIN Inc.*, 685 F.3d 622, 628 (7th Cir. 2012) (internal citations omitted). *See also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303-04 (3d Cir. 2012) (noting that the "critical test" in determining the sufficiency of notice is "how the information conveyed to the employer is reasonably interpreted," which is generally a question of fact) (internal quotations and citations omitted). In assessing the sufficiency of notice, an employee's comments and actions

14

must be placed in their proper context. *See Burnett v. LFW Inc.*, 472 F.3d 471, 480-81 (7th Cir. 2006). An employer must pay attention to all of the information it receives from an employee, and cannot treat each statement or action as though it exists in a vacuum. *Id.* The notice requirement is fulfilled where the progression of information would provide a reasonable employer with notice of a potential need for leave. *Id.* "[I]t is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997). Once an employee has expressed his need for leave, "[t]he employer will be expected to obtain any additional required information through informal means." *Id.* Further, "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee." Id.

Here, the record indicates that Harper provided notice of his FMLA-qualifying need for leave as soon as practicable. The earliest Harper learned of his need for surgery was August 31, 2021, and he told Thomas and Bernius that same day about the potential for surgery. SAMF ¶ 8-9. Then, on September 13, 2024, after he treated with Dr. Anewenah on September 8, 2021 and surgery was confirmed, Harper notified Thomas: "blood in my stool… Just prepare for the outcome" in reference to surgery. SAMF ¶ 13. Less than two days later, on September 15, 2021, Harper sent Thomas a text specifically referencing his surgery and asking if he needed to inform Deb. SAMF ¶ 14. Accordingly, Harper's notice of his need for leave was provided as soon as practicable, and was timely under the FMLA. *See Schmutte v. Resort Condos. Int'll, LLC*, No. 1:05-cv-0311-LJM-WTL, 2006 U.S. Dist. LEXIS 86262, *49-50 (S.D. Ind. Nov. 29, 2006) ("'As soon as practicable' ordinarily means at lease verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee.").

15

Further, Harper provided sufficient notice that his need for leave was FMLA-qualifying because he told his supervisor that he would be out for the surgery, and then informed Defendant just a few days after the surgery that he was in significant pain, but that he may be able to return to work at the end of the week. SAMF ¶ 19. Thus, Harper informed his employer that his condition would render him unable to perform the functions of his job for a period of time. Under the Act, sufficient notice may include that a condition renders the employee unable to perform the functions of the job. *Lutes*, 950 F.3d at 364; *see also Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 817 (7th Cir. 2015) (finding the notice sufficient where the plaintiff's wife emailed the employer informing them that the plaintiff had been hospitalized for an illness affecting his diabetes in a bad way).

Despite its obligations to inquire further if it was unclear whether Harper's leave was FMLA-qualifying, Defendant admits none of its employees made any further inquiry or discussed FMLA with Harper. Defendant's Statement of Material Facts ¶ 6. Based on Defendant's characterization of the lack of FMLA discussion between its employees and Harper, it is apparent Defendant believes that Harper had to specifically mention FMLA leave in order to be protected by the Act, but as noted above, Defendant's argument is misplaced, and shows that Defendant failed to meet its obligations under the FMLA.

Accordingly, there is a genuine issue of material fact as to whether Harper provided timely and sufficient notice of an FMLA-qualifying need for leave that precludes summary judgment.

### C. A REASONABLE JURY COULD FIND THAT DEFENDANT INTERFERED WITH OR DENIED HARPER FMLA RIGHTS

Next, there is a genuine issue of material fact as to whether Defendant denied or interfered with Harper's FMLA rights. To proceed under an interference theory, a plaintiff need only prove that he is entitled to benefits under the FMLA, and that the employer denied him entitlements

under the act. *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005) (collecting cases). Terminating an employee before they are able to exercise their FMLA rights is sufficient to sustain a claim for interference. *See Larson v. Endodontic & Periodontic Assoc.*, 2006 U.S. Dist. LEXIS 53541, No. 04 C 77305, *13-14 (N.D. Ill. Jul. 17, 2006); *Sample v. Rend Lake College*, 2005 U.S. Dist. LEXIS 23179, No. 04 C 4161, at *8 (S.D. Ill. Oct. 5, 2005). Here, Harper notified Defendant of his FMLA-qualifying need for leave as early as August 31, 2021, and in writing by September 15, 2021. SAMF ¶¶ 8-9; 14. Harper and then updated Defendant about his condition on September 20, 2021, noting he was in severe pain, but may be able to return by the end of the week. SAMF ¶ 19. Ultimately, Harper's doctor held him out until November 29, 2021, but Defendant fired Harper, preventing him from using FMLA. SAMF ¶¶ 20-21. Thus, there is a genuine issue of material fact as to whether Defendant interfered with Harper's FMLA rights by terminating him shortly after he notified Defendant of an FMLA-qualifying need for leave, and while he was out for medical treatment.

### D. A REASONABLE JURY COULD FIND THAT HARPER SUFFERED HARM AS A RESULT OF DEFENDANT DENYING OR INTERFERING WITH HIS FMLA RIGHTS

Next, Defendant's interference with Harper's FMLA rights has caused Harper economic harm. "The FMLA allows for back pay equal to the amount of 'any wages, salary, employment benefits, or other compensation denied or lost' to an employee by reason of an FMLA violation." *Breneisen v. Motorola, Inc.*, No. 02 C 50509, 2009 U.S. Dist. LEXIS 52360, * 18 (N.D. Ill. June 22, 2009) (citing 29 U.S.C. § 2617(a)(1)(A)(i)(l)). "Recoverable back pay consists of the amount that the plaintiff would have earned had he not been unlawfully terminated, less amounts earned between the termination and entry of judgment that the plaintiff would not have earned but for the

17

unlawful termination." *Cloutier v. Gojet Airlines*, 996 F.3d 426, 445 (7th Cir. 2021) (favorably quoting lower court's analysis).

Here, Harper suffered lost wages from approximately September 23, 2021, until November 29, 2021, while he was unemployed. Defendant argues that Harper suffered no harm because he received unemployment benefits, but that argument has no merit because the collateral source rule prohibits Defendant from relying on money Harper received for unemployment benefits to deduct from damages. *See Kirchhoff v. Chem. Processing, Inc.*, No. 20 CV 50242, 2023 U.S. Dist. LEXIS 136480, *5 (N.D. Ill. Jul. 31, 2023) ("Under the collateral source rule, a tortfeasor may not deduct from damages the money its victim receives from other sources, such as insurance. *Hunter v. Allis-Chalmers, Corp.*, 797 F.2d 1417, 1428 (7th Cir. 1986). Courts have discretion in deciding whether to apply the rule in employment cases. *Id.* at 1429. Courts within the Seventh Circuit typically apply the collateral source rule and do not offset such payments against backpay. *See, e.g., EEOC v. O'Grady*, 857 F.2d 383, 389-91 (7th Cir. 1988) ("in the interest of other social policies, it allows plaintiffs to be made more than whole for wrongs committed against them."); *Bell v. Prefix, Inc.*, No. 05 CV 74311, 2009 U.S. Dist. LEXIS 101887, at *3-4 (E.D. Mich. Nov. 2, 2009) ("[t]he Court finds no principled distinction between the FMLA and other employment discrimination laws such that the Sixth Circuit would decline to extend its previous holdings involving the collateral-source rule to the FMLA")). Thus, Defendant cannot rely on Harper's unemployment benefits to show Harper has suffered no harm as a result of its unlawful conduct.

Moreover, Harper's lost wages continued when he obtained subsequent employment, but at a lower rate of pay. SAMF ¶¶ 22-23. Accordingly, the facts clearly establish that Harper suffered harm. Thus, there is a genuine issue of material fact as to whether Harper suffered harm as a result

of Defendant's denial/interference of his FMLA rights the precludes summary judgment in favor of Defendant.

## CONCLUSION

For the foregoing reasons, Defendant cannot carry its burden to show that there are no genuine issues of material fact. Accordingly, Plaintiff respectfully requests the Court deny Defendant's Motion for Summary Judgment in its entirety.

Dated this 3rd day of September, 2024.

/s/ *Travis P. Lampert*
**TRAVIS P. LAMPERT, ESQ.**
**MOHAMMED O. BADWAN, ESQ.**
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 581-5456
mbadwan@sulaimanlaw.com
tlampert@sulaimanlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2024, I electronically filed the foregoing with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system which will serve all parties of record.

/s/ *Travis P. Lampert*
**TRAVIS P. LAMPERT, ESQ.**